UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC E.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 3:19-cv-5160-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Local Rule MJR 13.

I.    <u>ISSUES FOR REVIEW</u>

A.    Did the ALJ commit harmful error in discounting plaintiff's testimony regarding the severity of his impairments?

B.    Did the ALJ commit harmful error in discounting the lay witness testimony of plaintiff's wife?

C.    Did the ALJ commit harmful error in rejecting the opinions of examining neuropsychologist John Ernst, Ph.D.?

D.    Did the ALJ commit harmful error in rejecting the opinions of treating doctor Bruce Ransom, M.D.?

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

E.  Did the ALJ commit harmful error in rejecting the opinions of examining psychologist Kimberly Wheeler, Ph.D.?

F.  Did the ALJ commit harmful error in rejecting the opinions of treating nurse practitioner Sarah Magnuson-Whyte, DNP, ARNP?

G.  Were the ALJ's residual functional capacity ("RFC") and step five findings supported by substantial evidence in the record?

H.  Does additional evidence presented to the Appeals Council after the ALJ's decision require remand?

## II.  DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five, whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The Commissioner has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

The Court will uphold an ALJ's decision unless it is: (1) based on legal error, or (2) not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "'more than a mere scintilla'" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

A. <u>The ALJ Erred in Discounting Plaintiff's Testimony</u>

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ provides specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff testified, among other things, that he has severe memory loss.[1] *See* AR 169-83, 374-81. Plaintiff testified that he needs reminders for many of his daily activities.

---

[1] Plaintiff testified to various physical limitations, but he has not argued distinct issues concerning that part of his testimony. *See* Pl. Op. Br. (Dkt. # 12), pp. 12-14; Pl. Reply Br. (Dkt. # 19), pp. 8-9. The Court therefore focuses only on the ALJ's rejection of plaintiff's testimony regarding his alleged mental impairments.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

1 | *See* AR 176-77, 376. He testified that he can only remember things for about ten

2 | minutes. *See* AR 177. He testified that he can follow instructions if prompted. *See* AR

3 | 379, 381.

4 |       The ALJ found that plaintiff met the first step of the testimony assessment

5 | process, but that he had not met the second. *See* AR 100. The ALJ reasoned that

6 | plaintiff's testimony regarding the severity of his mental impairments was inconsistent

7 | with the overall medical evidence and plaintiff's general ability to recall past and ongoing

8 | events. *See* AR 102-03.

9 |       The ALJ erred in rejecting plaintiff's testimony as inconsistent with the medical

10 | evidence. Although an ALJ may consider the medical evidence in evaluating the

11 | severity of a claimant's impairments, "'an [ALJ] may not reject a claimant's subjective

12 | complaints based solely on a lack of objective medical evidence to fully corroborate the

13 | alleged severity of pain.'" *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

14 | (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (alteration in original);

15 | *see also Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to

16 | subjective complaints other than pain). Furthermore, the ALJ "cannot simply pick out a

17 | few isolated instances" of medical health that support her conclusion, but must consider

18 | those instances in the broader context "with an understanding of the patient's overall

19 | well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th

20 | Cir. 2016).

21 |       The ALJ supported her rejection of plaintiff's symptom testimony by referring to

22 | several normal findings yet overlooked the context of those findings. The ALJ noted that

23 | plaintiff had normal presentation at several appointments during the alleged disability

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

period, but many of those appointments were for physical conditions unrelated to plaintiff's mental health. *See* AR 102, 939, 977, 1194, 1200, 1216. But, when plaintiff was examined by providers focused on his mental health, those providers documented abnormal mental condition findings consistent with plaintiff's claims. *See, e.g.*, AR 599-600, 871, 1136, 1139, 1142, 1144, 1147, 1150, 1163, 1171, 1175.

The ALJ further reasoned, "neurological evaluations suggest that [plaintiff's] impairments do not have the intensity, persistence, and limiting affects alleged by [plaintiff]." AR 102. Pointing to Dr. Ransom's examination, the ALJ noted that plaintiff was "alert, fully oriented, and able to participate and cooperate fully with the exam, despite some inconsistent memory functioning." *Id.* This was not accurate, as Dr. Ransom reported that plaintiff was alert and oriented, but also that plaintiff had "unpredictable lapses in recent and remote memory. He sometimes offered insightful and appropriate comments about his difficulties with memory and decision making, while at other times he seemed dazed and confused about his circumstances." AR 871.

The ALJ noted that Thomas Grabowski, M.D., found inconsistencies in plaintiff's presentation, as well. *See* AR 102-03, 1116-18. But Dr. Grabowski did not clearly state that these inconsistencies led him to question the existence of a mental impairment; he noted them in explaining that plaintiff's condition was complex and in explaining why he was referring plaintiff for neuropsychological testing. *See* AR 1118. He later noted that plaintiff's inconsistencies could be due to "undiagnosed fluctuating conditions" or "voluntary embellishment," but did not state what he believed was the cause. *See* AR 1325. After plaintiff's insurance denied a functional imaging study, Dr. Grabowski recommended that plaintiff get retested by Dr. Ernst to try to understand the cause of

his impairments. *See* AR 1355-56. Dr. Grabowski's findings thus did not contradict plaintiff's testimony.

The ALJ also pointed to neuropsychological testing performed by Vaishali Phatak, Ph.D. to contradict plaintiff's testimony. *See* AR 103. In December 2016, Dr. Phatak evaluated plaintiff but found that "the results of [plaintiff's] cognitive testing are not felt to be sufficiently valid to capture his current cognitive functioning" because formal measures showed "suboptimal task engagement." AR 1311. The fact that tests ordered by a single doctor did not provide valid test results does not contradict plaintiff's testimony. The ALJ thus erred in rejecting plaintiff's testimony as inconsistent with the medical evidence and his neurological evaluations.

The ALJ's second reason for rejecting plaintiff's testimony—his apparent ability to recall past and ongoing events—is not convincing, either. Plaintiff testified that he has extremely limited immediate or short-term memory. *See* AR 176-77, 376. His ability to recall past events, basic details of his life, and news stories relates to memory of events that occurred longer ago, and thus does not contradict plaintiff's testimony. He testified that he can only remember new information for about ten minutes. *See* AR 177. The ALJ did not address this dichotomy, and therefore erred in rejecting plaintiff's symptom testimony regarding his mental impairments.

B.   <u>The ALJ Erred in Rejecting Plaintiff's Wife's Testimony</u>

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject

1 such lay witness evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

2 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each

3 witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

4     Plaintiff's wife testified that plaintiff struggled to remember to take his medications

5 and struggled with performing basic tasks. AR 190-91. She also testified that plaintiff

6 experienced expressive aphasia, the inability to produce words to speak, about three

7 days per month. AR 192-94. These episodes last from a half to a full day. AR 194.

8     The ALJ rejected this testimony. *See* AR 105-06. The ALJ found plaintiff's

9 spouse made "observations similar to [plaintiff's] own subjective complaints of extreme

10 memory loss and cognitive decline," and thus rejected them for the same reasons she

11 rejected plaintiff's testimony. *Id.*

12     Because the ALJ relied on the same reasons for rejecting plaintiff's wife's

13 testimony as she relied on for rejecting plaintiff's testimony, this likewise was error.

14 Although the standard is lower for lay witness statements, the ALJ's interpretation of the

15 evidence was unreasonable, so this reasoning does not meet the "germane" standard.

16 *See supra* Part II.A.

17     C.    <u>The ALJ Erred in Discounting Dr. Ernst's Opinions</u>

18     The ALJ must provide "clear and convincing" reasons for rejecting the

19 uncontradicted opinion of a treating or examining doctor. *Trevizo*, 871 F.3d at 675

20 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a

21 treating or examining doctor's opinion is contradicted, an ALJ must provide specific and

22 legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support

23 the ALJ's findings. *Id.*

24

25

1  Dr. Ernst examined plaintiff on January 11, 2016. *See* AR 840-47. Dr. Ernst interviewed plaintiff and his wife, conducted a mental status exam, and administered a number of cognitive functioning tests. *See* AR 840-46. Based on his evaluation, Dr. Ernst opined that plaintiff had deficits in executive functioning, and in his ability to learn and recall new information. AR 846. Dr. Ernst opined that "[t]he degree of deficit identified at this time indicates he would not be able to hold gainful employment." *Id.*

The ALJ gave Dr. Ernst's opinions little weight. AR 104. The ALJ reasoned that "[w]hile Dr. Ernst relied on objective testing when assessing [plaintiff], his report does not indicate that he considered the validity of the results." *Id.* The ALJ noted that at least one other evaluator found that the results from her testing of plaintiff were invalid due to a lack of effort and engagement. *Id.* The ALJ further reasoned that Dr. Ernst's opinions were contradicted by the other medical evidence and reports in the record. *Id.* The ALJ determined that Dr. Ernst relied too heavily on the subjective reports of plaintiff and plaintiff's spouse. *Id.* The ALJ last rejected Dr. Ernst's opinion that plaintiff could not maintain gainful employment because Dr. Ernst "does not appear to have expertise in vocational factors or the regulations governing Social Security Administration disability." *Id.*

The ALJ erred in rejecting Dr. Ernst's opinions and reasoning that he did not consider whether results of objective tests and evaluation of those results were valid. Dr. Ernst is a trained professional and it is not reasonable to assume that he would include invalid test results in his evaluation of plaintiff. The ALJ attempted to bolster her reasoning by pointing out that Dr. Phatak found her own test results to be invalid. *See* AR 103. Even if one doctor's test results were invalid, this does not establish that

DEFENDANT'S DECISION TO DENY BENEFITS - 8

another doctor's separately-administered test results were invalid. The record does not indicate whether all of the tests administered by each of these doctors were precisely the same tests. *See* AR 843-45, 1309-11. The ALJ therefore erred in rejecting Dr. Ernst's opinions based on a failure to consider the validity of objective test results.

The ALJ's second reason for rejecting Dr. Ernst's opinions—that it was contradicted by other medical evidence—mirrors her first reason for discounting plaintiff's testimony. *See* AR 102-04. As discussed above, the ALJ's reasoning was flawed, so it was not a valid reason to reject Dr. Ernst's opinions. *See supra* Part II.A.

The ALJ's third reason for rejecting Dr. Ernst's opinions—that they relied too heavily on plaintiff's self-reports—is error, because the ALJ did not take into consideration the unique nature of mental health treatment. Mental health evaluations "will always depend in part on the patient's self-report" because "'unlike a broken arm, a mind cannot be x-rayed.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). Accordingly, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Moreover, an ALJ may not reject a medical source opinion because it is based on the claimant's self-reports when the medical source analyzes those self-reports using objective measures such as a clinical interview and mental status exam. *Id.* Dr. Ernst conducted both, as well as other objective tests; the ALJ erred in rejecting Dr. Ernst's opinions for being based on plaintiff's self-reports. *See* AR 840-46.

The ALJ committed no error, though, in rejecting Dr. Ernst's opinion that plaintiff "would not be able to hold gainful employment." AR 846. The ALJ correctly noted that

Dr. Ernst had no established expertise with vocational factors or social security disability regulations, and plaintiff's ultimate ability to work is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

### D.   The ALJ Erred in Rejecting Dr. Ransom's Statements

Dr. Ransom met with plaintiff on several occasions, including March 15, 2016 – for a follow up after Dr. Ernst's evaluation. *See* AR 870-71. After summarizing Dr. Ernst's findings, Dr. Ransom opined that plaintiff "is clearly unable to support his family at this point and is thus a candidate for disability." AR 871.

The ALJ rejected Dr. Ransom's opinion because it relied entirely on Dr. Ernst's evaluation, and because the validity of testing Dr. Ernst performed had been called into question by testing other doctors performed. AR 104.

The ALJ erred in rejecting Dr. Ransom's opinion. The ALJ erred in rejecting Dr. Ernst's opinions, and in challenging the validity of Dr. Ernst's testing without evidence to support that challenge. *See supra* Part II.C. The ALJ therefore could not reject Dr. Ransom's opinion for being based on Dr. Ernst's evaluation.

### E.   The ALJ Erred in Rejecting Dr. Wheeler's Opinions

Dr. Wheeler examined plaintiff on August 15, 2014. *See* AR 596-600. Dr. Wheeler conducted a clinical interview and performed a mental status exam. AR 596-97, 599-600. She opined that plaintiff was markedly limited in his ability to adapt to changes in the workplace, and markedly limited in his ability to complete a normal work day or week without interruptions from his psychologically-based symptoms. AR 598-99. Dr. Wheeler explained that plaintiff's symptoms could be expected to last "6-9-12+

months." AR 599.

The ALJ gave Dr. Wheeler's opinions little weight (AR 104-05), reasoning that Dr. Wheeler did not give any explanation or support for her opinions. AR 104. The ALJ also reasoned that Dr. Wheeler's opinions were vague, in part because she gave several different estimates as to how long plaintiff's limitations would last. *Id.* And the ALJ reasoned that Dr. Wheeler did not review records, and relied too heavily on plaintiff's self-reports in forming her opinions. AR 104-05.

The ALJ erred in rejecting Dr. Wheeler's opinions as inadequately explained or supported. Even where a doctor's opinion is brief and conclusory, an ALJ must consider its context in the record. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding the ALJ erred in finding a treating doctor's opinion "conclusory" and supported by "little explanation," where the ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"). Dr. Wheeler described the results of her clinical interview and mental status exam, both of which indicated abnormalities. *See* AR 596-97, 599-600. And, as explained above, the overall record includes evidence showing abnormal mental functioning. *See* AR 871, 1136, 1139, 1142, 1144, 1147, 1150, 1163, 1171, 1175. This evidence could support or explain Dr. Wheeler's opinions, and the ALJ therefore erred in cursorily dismissing those opinions.

The ALJ further erred in rejecting Dr. Wheeler's opinions as vague due to her use of several date ranges for how long plaintiff's impairments would persist. Dr. Wheeler explained that she put a variable date range because plaintiff's symptoms were impacted by physical issues, and she could not state their duration. *See* AR 599. Dr. Wheeler's use of a date range was therefore specific rather than vague, and could not

be dismissed out-of-hand.

The ALJ also erred in rejecting Dr. Wheeler's opinions for being too heavily based on plaintiff's self-reports. As with Dr. Ernst, Dr. Wheeler performed objective measures including a clinical interview and mental status exam. *See* AR 596-97, 599-600. The ALJ erred in ignoring these objective measures and rejecting Dr. Wheeler's opinions as too heavily based on plaintiff's self-reports. *See Buck*, 869 F.3d at 1049.

### F. The ALJ Erred in Rejecting Nurse Practitioner Magnuson-Whyte's Opinions

Nurse Practitioner Magnuson-Whyte was plaintiff's treating provider. *See* AR 1122-76. In December 2016, she completed a mental RFC assessment. *See* AR 1303-06. Ms. Magnuson-Whyte opined that plaintiff was markedly limited in all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 1304-05. Ms. Magnuson-Whyte explained that plaintiff "struggles on a daily basis." AR 1305. As a result, it was "hard to imagine [plaintiff] would be able to sustain any sort of meaningful employment – either simple or complex." *Id.*

The ALJ rejected Ms. Magnuson-Whyte's opinions. AR 105. The ALJ reasoned that Ms. Magnuson-Whyte gave no support or explanation for her opinions. *Id.* The ALJ further reasoned that Ms. Magnuson-Whyte's opinions were too heavily based on plaintiff's self-reports. *Id.* The ALJ last rejected Ms. Magnuson-Whyte's opinion that plaintiff was unable to work because that is an issue reserved to the Commissioner, and Ms. Magnuson-Whyte had no apparent expertise with vocational factors or Social Security Administration disability regulations. *Id.*

An ALJ must give germane reasons to reject the opinions of a nurse practitioner. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (holding that nurse

practitioners are "other sources" rather than acceptable medical sources, so an ALJ need only provide germane reasons to discount their opinions).[2] None of the reasons the ALJ provided here meet this standard.

The ALJ erred in rejecting Nurse Practitioner Magnuson-Whyte's opinions based on a lack of support or explanation. Although Ms. Magnuson-Whyte did not provide a detailed explanation in her mental RFC assessment, her treatment records document observations that could reasonably support her opinions. *See* AR 1136, 1139, 1142, 1144, 1147, 1150, 1163, 1171, 1175. The ALJ failed to address these reports, and thus erred in rejecting Ms. Magnuson-Whyte's opinions as inadequately explained or supported. *See Burrell*, 775 F.3d at 1140.

The ALJ further erred in rejecting Ms. Magnuson-Whyte's opinions as too heavily based on plaintiff's self-reports. Again, mental health treatment out of necessity must rely at least in part on the claimant's report of his symptoms. *See Buck*, 869 F.3d at 1049. And Ms. Magnuson-Whyte documented her observations, which could reasonably support her opinions. *See* AR 1136, 1139, 1142, 1144, 1147, 1150, 1163, 1171, 1175. The ALJ thus erred in rejecting Ms. Magnuson-Whyte's opinions on plaintiff's functioning level.

The ALJ did not err in rejecting Ms. Magnuson-Whyte's opinion that plaintiff was unable to sustain any employment. As she did with Dr. Ernst's opinion on plaintiff's employability, the ALJ correctly noted that Ms. Magnuson-Whyte had no established

---

[2] The Commissioner issued revised regulations regarding nurse practitioners, potentially changing the standard by which the ALJ's reasons are judged. *See* 20 C.F.R. § 404.1502(a)(7). Those regulations apply only to claims filed after March 27, 2017, and thus do not apply here. *See id.*

expertise with vocational factors and social security disability regulations. *See* AR 105. And plaintiff's ultimate ability to work is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Tonapetyan*, 242 F.3d at 1148.

### G. The ALJ's RFC and Step Five Findings Were Not Supported by Substantial Evidence in the Record

Plaintiff argues the ALJ erred in formulating the RFC, and in making her step five findings. Pl. Op. Br. at 14. Plaintiff argues the ALJ failed to properly evaluate plaintiff's symptom testimony, plaintiff's wife's testimony, and the medical opinion evidence, so the RFC was incomplete, and the step five finding, in turn, was not supported by substantial evidence. *See id.* Because the Court has found in plaintiff's favor on the evidentiary issues raised, plaintiff's argument succeeds. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (holding that ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments).

### H. The ALJ Should Consider Plaintiff's Additional Evidence on Remand

Plaintiff submitted additional medical evidence to the Appeals Council after the ALJ's decision. *See* AR 27-30, 50-90. The Appeals Council determined this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision, and some of it did not relate to the period at issue. *See* AR 2. The Court need not address whether the Appeals Council erred because the ALJ may consider this new evidence on remand.

### I. Remand with Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the Court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the Court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The errors described and analyzed above may be remedied on remand. On remand, the ALJ is directed to reevaluate plaintiff's testimony regarding his mental impairments, plaintiff's wife's testimony, Dr. Ernst's opinions, Dr. Ransom's opinions, Dr. Wheeler's opinions, and Ms. Magnuson-Whyte's opinions. The ALJ shall consider plaintiff's additional evidence, reassess plaintiff's RFC, and reevaluate step five of the disability evaluation process.

The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

### III.   CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 20th day of April, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge